IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RANDEE A. DUNKEL,                                6:12-CV- 00621 RE

        Plaintiff,                              **OPINION AND ORDER**

    v.

**MICHAEL J. ASTRUE,**
Commissioner of Social Security,

        Defendant.

**REDDEN**, Judge:

Plaintiff Randee Dunkel ("Dunkel") brings this action to obtain judicial review of a final

decision of the Commissioner of the Social Security Administration ("Commissioner") denying

her claim for disability insurance benefits ("DIB"). For the reasons set forth below, the decision

of the Commissioner is reversed  and this matter is remanded for further proceedings.

## BACKGROUND

Dunkel filed her application in October 2009. She graduated from high school and

attended business school. Tr. 136. She has worked as an office manager. Tr. 59-60.  Born in

·1950, Dunkel was 44 years old on her amended alleged disability onset date of January 1, 1995. She alleges disability due to multiple sclerosis, fibromyalgia, chronic myofacial syndrome, sleep apnea, depression, arthritis in hands, shoulders, back and left hip, and diverticulitis. Tr. 130. Her application was denied initially and upon reconsideration. A hearing was held in November 2011. The Administrative Law Judge ("ALJ") found her not disabled. Dunkel's request for review was denied, making the ALJ's decision the final decision of the Commissioner.

### ALJ's DECISION

The ALJ found that through Dunkel's date last insured, December 31, 1998, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment. Tr. 13. The ALJ found that Dunkel was not disabled at any time from January 1, 1995, through December 31, 1998, and therefore denied Dunkel's claim at step two.

### DISCUSSION

**A. Step Two**

At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert,* 482 US 137, 140-41 (1987). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." According to the regulations, "an impairment is not severe if it does not significantly limit [the claimant's ] physical ability to do basic work activities." 20 CFR § 404.1521(a). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 CFR § 404.1521(b).

The step two inquiry is a *de minimis* screening device to dispose of groundless claims.

*Yuckert,* 482 US at 153-54. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." *See* SSR 85-28; *Yuckert v. Bowen,* 841 F2d 303, 306 (9th Cir 1988) (adopting SSR 85-28). A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, and cannot be established on the basis of a claimant's symptoms alone. 20 CFR § 404.1508. A "physical or mental impairment" is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner points to *Ukolov v. Barnhart,* 420 F.3d 1002 (9th Cir. 2005). The *Ukolov* court found neurologists' reports regarding a claimant's gait and balance difficulties were insufficient to establish the existence of a medically determinable impairment, and the ALJ committed no legal error in finding lack of impairment at step two of the process.

In order to be entitled to Title II disability benefits, Dunkel must prove that she was disabled on or before her date last insured, December 31, 1998. 20 C.F.R. § 404.315; *Webb v. Barnhart,* 433 F.3d 683, 685 (9th Cir. 2005). Medical evidence post-dating the date a claimant was last insured may be relevant in determining whether a disability had an onset prior to the expiration of the claimant's insured status. *Flaten v. Sec'y of Health & Human Servs.,* 44 F.3d 1453, 1461 n. 5 (9th Cir. 1995)

On May 12, 1999, Dunkel was examined by Dr. Morris, a chronic pain and rehabilitation specialist, at the request of Dr. Karasek, a neurologist. Tr. 356. Dunkel reported chronic low back pain and lower extremity pain that had started about four years earlier, with continuous pain

in the groin and burning pain in the left thigh.  Plaintiff also reported depression, mood swings, and memory issues.  Tr. 357.  She described muscle weakness, numbness, chronic fatigue, sleep issues, and loss of energy.  *Id.*  Dr. Morris noted that he had reviewed records from Drs. Hacker, Karasek, and Hansen, and reviewed an MRI of the pelvis and lubmosacral spine.  Tr. 358.  Those medical records created prior to May 1999 are not available and not in the record.

In March 2001, Dunkel reported to Dr. Morris worsening musculoskeletal pain, fatigue, and back pain radiating down her legs.  Tr. 554.  Dr. Morris noted myofascial banding and triggering, and diagnosed intractable low back pain, status post discectomy, depression, and degenerative lumbosacral spine disease.

On May 10, 2001, Dr. Morris reported an asymmetric neurologic examination with signs of an upper neuron lesion, and referred Dunkel to a neurologist to check for multiple sclerosis.  Tr. 552.  In June 2001 Dr. Morris noted an MRI indicated progression of the disc bulge at L3-4, and right L4 nerve impingement possible with progression of lumbosacral stenosis.  Tr. 548.

In October 2001, Dr. Morris reported that a brain MRI revealed demyelinating lesions, and told Dunkel there was a possibility that she had multiple sclerosis.  Tr.547.  In April 2002, Kathleen Wilken, M.D., a neurologist, diagnosed multiple sclerosis, relapsing-remitting, fibromyalgia, chronic recurrent headache disorder, depression, and history of chronic low back pain.  Tr. 464.

On January 26, 2011, Dr. Morris wrote a letter to plaintiff's counsel, stating that Dunkel had fibromyalgia, degenerative osteoarthritis, intractable groin pain with genitofemoral nerve entrapment, multiple sclerosis, and degenerative spine disease.  Tr. 241.  He wrote:

/ / /

4 - OPINION AND ORDER

> She was first seen in my office May 12, 1999. The medical conditions
> began affecting Mrs. Dunkel in 1995 or before. She has been unable to
> hold a job outside of the home since I met her. Her condition is ex-
> pected to last until indefinite. No cure or palliative care is expected to
> improve her functional capacities. Mrs. Dunkel will be unable to return
> to work in the future and her condition is permanent. Deterioration in
> her condition due to advancing multiple sclerosis is likely.
>
> Restrictions: limited sitting, standing, walking or reaching. Cannot
> lift more than 10 lb occasionally. Unable to bend, twist, stoop. Unable
> to withstand stress. Flare-ups in condition will cause disability and
> inability to work in any capacity on an average of 4-6 days per month.

*Id.*

The ALJ noted Dr. Morris's opinion, and gave it "little weight." Tr. 15. The ALJ noted

that Dr. Morris first saw Dunkel in May 1999, four months after her original alleged onset date,

and more than four years after the amended alleged onset date. The Commissioner concedes that

the ALJ cannot reject Dr. Morris's opinion on the basis that it was made after the expiration of

Dunkel's insured status.

The ALJ stated that "Dr. Morris's short letter dated January 26, 2011, is vague." Tr. 15.

He wrote:

> Dr. Morris assessed restrictions on many work-related exertional
> and nonexertional activities. His assertions are conclusory and
> it is unclear whether his 'restrictions' are current or intended to
> describe the claimant in May 1999 when he first saw her.

*Id.*

The Commissioner concedes that the ALJ erred in rejecting Dr. Morris's opinion as

unclear without seeking additional information. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th

Cir. 2001)("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow

for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate

inquiry.'")(citations omitted).

The Commissioner argues that the ALJ's errors were harmless because the ALJ articulated another reason for rejecting Dr. Morris's January 2011 opinion letter, specifically that "[T]he claimant has no other records from Dr. Morris or any other care provider from that time period (1999), and none from the time of the amended onset date (1995)." Tr. 15. The Commissioner notes that an ALJ can properly reject a doctor's retrospective assessment that is not substantiated by medical evidence relevant to the period in question.

However, as plaintiff points out, Dr. Morris reviewed medical records from Drs. Hacker, Karacek, and Hansen. Tr. 356-59. In his examination, Dr. Morris noted a trigger point in the left abdominal rectus and the iliopsoas/iliacus. Tr. 357. Plaintiff's left genitofemoral nerve was "quite tender." *Id.* Dr. Morris noted trigger points in the quadratus lumborum and gluteus medius, bilaterally. *Id.* Most importantly, he reviewed an MRI of the pelvis and lumbosacral spine. Tr. 358. Dr. Morris concluded that Dunkel had degenerative lumbosacral disc disease, myofascial pain syndrome, and genitofemoral neuropathy of unclear etiology. *Id.*

Moreover, Dr. Morris's records contain multiple notes indicating that the doctor believed Dunkel's condition to be disabling. In June 2008 he found her "condition is disabling. Patient is unable to work at this time. Condition is permanent. Deterioration in condition and functional capacities may occur over time." Tr. 304. Dr. Morris made similar notes in March 2010. Tr. 263. On January 11, 2011, Dr. Morris wrote in his chart notes that Dunkel "has been disabled since at least 1998, only working part time for her husband at home at her own pace and with generous accommodations. She could not sustain employment in the work force." Tr. 247.

In this case, unlike *Ukolov*, there is at least one piece of objective medical evidence of

impairment, the MRI that Dr. Morris reviewed in May 1999. Accordingly, the ALJ erred by finding that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment.

## B. Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000), *cert. denied,* 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r,* 635 F.3d 1135, 1138-39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively, and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart,* 340 F.3d 871, 876 (citing *Bunnell v. Sullivan,* 947 F.2d 871(9th Cir. 2003)(en banc)). The reviewing court should decline to credit testimony when "outstanding

issues" remain. *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010).  In this case, there are

outstanding issues and remand is appropriate.

Accordingly, this matter is remanded for further proceedings in accordance with this

Opinion and Order.

IT IS SO ORDERED.

Dated this _16_ day of April, 2013.


JAMES A. REDDEN
United States District Judge